[No. A105783. First Dist., Div. Two. Dec. 14, 2004.]

RONALD BILES, Plaintiff and Appellant, v.
EXXON MOBIL CORPORATION, Defendant and Respondent.

1316

COUNSEL

Brayton Purcell and Alan R. Brayton, Gilbert L. Purcell, Lloyd F. LeRoy and David Polin for Plaintiff and Appellant.

Armstrong & Associates and William H. Armstrong for Defendant and Respondent.

OPINION

**RUVOLO, J.—**

### I.

#### INTRODUCTION

In deciding this appeal we deconstruct a civil discovery "urban legend"[1]—that a responding party has an affirmative duty to supplement responses to

---

[1] Urban legend is defined as: " 'Urban myth' orig. *U.S.*, a sensational but apocryphal story which through repetition in varying versions has acquired the status of folklore, *esp.* one lent

interrogatories if and when new information comes into that party's possession, particularly if the party reserved the right to amend or supplement the earlier responses. Here a defendant sued in an asbestos personal injury case on a premises liability theory moved for summary judgment, contending that the plaintiff could not show he had been exposed to asbestos on the defendant's premises in a manner for which the defendant could be held liable. The plaintiff countered with a declaration from one of his former coworkers, stating that while they were both working for a contractor on the defendant's premises, the defendant's employees used air hoses to blow asbestos dust in their direction.

The defendant objected to the declaration on the ground that the coworker had not been identified in answer to an earlier interrogatory seeking the names of persons who had knowledge of plaintiff's exposure to asbestos on the defendant's premises, and that plaintiff had failed to supplement his answer to include the name. The trial judge excluded the declaration, and granted summary judgment for the defendant.

Plaintiff appeals, arguing that his failure to identify the witness in his interrogatory answer, and to supplement that answer before submitting the witness's declaration, was not grounds for excluding the declaration from evidence in connection with the summary judgment motion. We agree, and, because the declaration raises a triable issue of material fact as to the defendant's liability, we reverse the summary judgment.

## II.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff Ronald Biles (Biles) was diagnosed with asbestosis and asbestos-related pleural disease in October 2001.[2] From October 1968 through March

---

plausibility by its contemporary setting, or by the purported involvement of someone known to the teller." (Oxford English Dict. (http://dictionary.oed.com/cgi/entry_main/50273588/50273588se14?query_type=word&q [as of December 2004]).)

[2] For the purpose of its summary judgment motion, Exxon treated some of the background allegations of Biles's complaint, and portions of Biles's deposition testimony, as undisputed facts. Consistent with the principles governing our review of the trial court's decision, we will do the same. (See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143] [court reviewing summary judgment must view evidence in light favorable to losing party].)

1969, Biles worked as an insulator for a subcontractor engaged to assist in the construction of an oil refinery (the Humble refinery) for Humble Oil (Humble), the predecessor in interest of defendant Exxon Mobil Corporation (Exxon). Based on this experience,[3] when Biles filed a personal injury lawsuit in April 2002 seeking damages for his asbestos-related illness, he included Exxon as a defendant on a premises liability theory.

During discovery, Exxon served a set of special interrogatories on Biles, which he answered in May 2003. One of Exxon's interrogatories asked Biles to identify "each person who has knowledge specifically of the work at [the Humble refinery] that you contend created your exposure to asbestos fibers." Biles's response was that "After a reasonable and good faith inquiry, plaintiff currently has no further information responsive to this Interrogatory. Plaintiff expressly reserves the right to amend or supplement this Response based on the outcome of such investigation. Plaintiff's investigation and discovery are continuing."

At his deposition in April 2003, Biles testified that during his work at the Humble refinery, he did not recall seeing or having direct personal contact with anyone employed by the refinery. On October 6, 2003, Exxon filed a summary judgment motion, relying in part on this deposition testimony to support the contention that "there was no dangerous condition [at the Humble Refinery] . . . that was controlled by Exxon[] . . . ." Exxon's separate statement of undisputed facts did not refer to Biles's interrogatory answers, nor were they included in the papers submitted in support of the summary judgment motion.

On October 29, 2003, about three weeks after Exxon filed its summary judgment motion in the present case, the deposition of a man named Roger Bellamy was taken in a different asbestos personal injury case (the *Kiss* action) in which the plaintiffs were John and Joan Kiss, and Exxon was one of the defendants. The plaintiffs in the *Kiss* action, and Bellamy himself as a deposition witness, were represented by the same law firm that represents Biles in this action. Exxon was also represented by the same law firm in both

---

[3] Biles also worked for subcontractors at the Humble Refinery on one or two other occasions, but for purposes of this appeal, he does not contend that he raised a triable issue of fact as to Exxon's premises liability except with respect to his work there during 1968 and 1969.

actions. During the deposition, Bellamy testified that he had worked with John Kiss and Biles at the Humble Refinery between October 1968 and March 1969.

On December 8, 2003, Biles filed his opposition to Exxon's summary judgment motion. Biles's opposition papers included excerpts from Bellamy's deposition in the *Kiss* action, as well as a declaration from Bellamy (the Bellamy declaration). The Bellamy declaration stated that during the time Bellamy and Biles worked together at the Humble Refinery, Bellamy saw personnel employed by Exxon, approximately 60 feet from himself and Biles, who were "utilizing compressed air hoses to blow the asbestos dust throughout the worksite, including throughout the area where [Biles] and I were then performing our work." The Bellamy declaration also averred that Bellamy "was able to identify the [Exxon] personnel based on their hard hats which said 'Exxon,' and based on conversations with other members of my crew."

In Biles's response to Exxon's separate statement of undisputed facts, he relied on the Bellamy declaration as evidence that Exxon "actively and negligently exposed him to asbestos while [Exxon's] operators and laborers were cleaning up equipment to be operated by [Exxon] personnel, utilizing brooms and air hoses which dispersed asbestos-containing dust into [Biles's] work environment." Biles submitted no evidence supporting this factual contention other than the Bellamy declaration.

In its reply papers in support of the summary judgment motion, filed on December 16, 2003, Exxon objected to the admission of the Bellamy declaration on the ground that Bellamy had not been identified in Biles's response to Exxon's interrogatories. Exxon also noted that the same law firm that represents Biles in the present case had also represented Bellamy in his own asbestos suit, and had defended him during a deposition taken in that case in May 1996, at which Bellamy testified about his work at the Humble Refinery during 1968 and 1969. The excerpts from Bellamy's 1996 deposition submitted by Exxon did not, however, include any mention of Biles, or any questioning regarding whether Exxon's employees took any action that resulted in Bellamy's being exposed to asbestos dust.

The hearing on the summary judgment motion took place on December 22, 2003. Addressing Biles's counsel, the trial judge opined that "When you found out [o]n October 19th that Bellamy had information about Biles, it was incumbent upon you to pass that information on because nobody knew about it, you were the only ones who did. I don't know whether these people, Exxon['s counsel], were involved in the Kiss case or not,[4] but it is still

---

[4] Biles's counsel later pointed out to the judge that Exxon had been represented at Bellamy's deposition in the *Kiss* case, but disclaimed any intent to argue that this gave Exxon's counsel

incumbent upon you to supplement that interrogatory because you said you would everytime [*sic*] you got information. You didn't do it and now in a summary judgment motion suddenly on December 7th, 2003, we have Roger Bellamy blossoming in this case and nobody ever heard of him before." He reiterated that "you said you were going to supplement, you didn't do it, you sprung Bellamy on in connection with a summary judgment motion. You can't do that."

After hearing argument from counsel, the judge once again stated that, "Look, when you answer an interrogatory and you don't give any names at all but say you are going to supplement it, the obligation is on you to supplement it as soon as you find out. [¶] Regardless of the 1996 case, it's real clear that at least as of October 29th, 2003 in Mr. Kiss's case, you found out that Mr. Bellamy knew something relevant to Mr. Biles' case. It was incumbent upon you to let Exxon know . . . that you found something there that mattered. That didn't happen. Mr. Bellamy didn't show up until the summary judgment motion was filed and in the opposition [you] submitted a declaration on December 7th saying for the first time . . . [that Bellamy] worked with Mr. Biles at the Exxon refinery. That is too late, can't do it."

The trial judge thereupon signed Exxon's proposed order granting the motion for summary judgment. Judgment was entered accordingly on February 5, 2004, and this timely appeal ensued.

## III.

### DISCUSSION

■ On appeal, Biles argues that the trial court erred in excluding the Bellamy declaration from evidence, and that if the Bellamy declaration is considered, his opposition to the summary judgment motion raised a triable issue of fact. We review the trial court's ruling excluding the Bellamy declaration for abuse of discretion (*Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 388–389 [97 Cal.Rptr.2d 12]), and the trial court's grant of summary judgment de novo. (*Saelzler v. Advanced Group 400*, *supra*, 25 Cal.4th at p. 767.)

### A. The Exclusion of the Bellamy Declaration Was Not Based on a Finding That Appellant's Earlier Interrogatory Answers Were Willfully False

The trial judge cited no authority for his ruling that the Bellamy declaration was inadmissible due to Biles's failure to identify Bellamy in his

---

the responsibility to know about Bellamy in relation to the Biles case. In any event, this information did not prompt the trial judge to change his tentative ruling granting the motion.

interrogatory responses. However, it appears he was relying on *Thoren v. Johnston & Washer* (1972) 29 Cal.App.3d 270 [105 Cal.Rptr. 276] (*Thoren*), which Exxon cited as the primary support for its argument in the trial court, and on which Exxon continues to rely on appeal. Accordingly, we take *Thoren* as the starting point for our review of the judge's evidentiary ruling.

In *Thoren*, an injured construction worker sued a subcontractor of his employer, alleging that the subcontractor's negligence had created a dangerous condition on the job site. In answer to an interrogatory asking for the identities of witnesses who had arrived at the accident scene shortly after the plaintiff was injured, the plaintiff named one, and only one, person. The interrogatory answer did not by its terms anticipate continuing discovery or further responses, and it apparently was not supplemented at any time before the case was called for a jury trial some two and a half years later. (*Thoren, supra*, 29 Cal.App.3d at pp. 272–273.)

When the trial began, the plaintiff's counsel indicated in his opening statement that he expected to call a witness named Robert Clubb to testify about the condition of the job site shortly after the accident. The defendant moved to exclude Clubb's testimony on the ground that he had not been named in the interrogatory answer. At a hearing outside the jury's presence, the trial judge learned that Clubb was a representative of the plaintiff's union; that he had gone to the job site and taken photographs as soon as he heard about the accident; that he had sent the photographs to the plaintiff's attorney; and that he had been responsible for referring the plaintiff to that attorney. Based on these facts, the trial judge excluded Clubb's testimony. Without that evidence, the plaintiff had no proof of the defendant's responsibility for his injuries, so the court granted the defendant's motion for a nonsuit. (*Thoren, supra*, 29 Cal.App.3d at p. 273.)

On appeal, the court affirmed, reasoning that "[t]he power of the trial court to bar the testimony of a witness willfully excluded from an answer to an interrogatory seeking the names of witnesses to an occurrence is found in the express language of the discovery act and is an inherently necessary one if the purposes of the act are to be achieved." (*Thoren, supra*, 29 Cal.App.3d at p. 273.) The court went on to opine that "[a] willfully false answer to an interrogatory must be treated as the equivalent of no answer at all . . . ," and that "[w]here . . . that falsity lies in the deliberate omission of the name of a witness to the occurrence, an order barring the testimony of the witness must be sustained as a sanction . . . which the trial court properly 'deemed just.' " (*Id.* at p. 274; see also *id.* at p. 275 [because plaintiff "gave the name of only one person" in interrogatory answer, "the trial court could properly hold that he should be limited to calling that person to testify . . . ."].)

We have no quarrel with the *Thoren* court's general statements of the law, but find *Thoren* distinguishable both procedurally and on its facts from the circumstances of the present case. In *Thoren*, it was not until the start of trial, over two years after plaintiff served his interrogatory answer, that the defendant learned a witness had been omitted. The court noted that because "the falsity of the answer was not discovered until a jury had been impaneled, [the] situation militat[ed] against solution of the problem by a continuance." (*Thoren, supra*, 29 Cal.App.3d at p. 275.) Here, in contrast, the record indicates that no trial date had been set when the summary judgment motion was filed. Moreover, the summary judgment motion was filed only five months after Biles's interrogatory response was served, and the Bellamy declaration was submitted in opposition two months after the motion was filed.

Most importantly, before ruling on the motion to exclude the challenged testimony, the trial court in *Thoren* held a hearing, and concluded, based on substantial evidence, that at the time the interrogatory was answered, the plaintiff's counsel either had actual knowledge of the witness's role in the case, or deliberately refrained from finding it out before answering. Thus, the court determined that the interrogatory answer omitting the witness's name was not merely incomplete, but "willfully false." (*Thoren, supra*, 29 Cal.App.3d at pp. 273, 275–276.)

The court in this case conducted no evidentiary hearing as to when Biles or his counsel first learned that Bellamy was in possession of facts relevant to Exxon's potential liability for Biles's asbestos exposure. Instead, the court appears to have assumed that the information had been discovered only at, or shortly after, Bellamy's deposition on October 29, 2003. Even if this assumption was correct, the court did not find that Biles or his counsel were aware that Bellamy was a potential witness any earlier than October 29, 2003—well *after* the interrogatory answer was served (and, indeed, after Exxon had already filed its summary judgment motion). Therefore, Biles's initial responses could not have been willfully false when made, and *Thoren* is distinguishable.

Additionally, we are no more persuaded than the trial judge by Exxon's argument that Biles's counsel knew or should have known about Bellamy's potential to be a witness in Biles's case based on the mere fact that the same law firm had represented Bellamy in his own case in 1996. Exxon has not provided any evidence that Bellamy ever mentioned Biles to his counsel at that time. Even if he had, there is no evidence that the attorney representing Bellamy six years earlier was in any way involved in Biles's case, or that he or she was even still with the firm. Indeed, the record reflects there was no overlap of counsel, and that, in each instance, different plaintiffs' counsel

from the same law firm drafted the complaint and interrogatory responses in Biles's case, appeared at the Bellamy deposition in the *Kiss* action, filed the opposition to Exxon's motion for summary judgment, and attended the hearing on the motion. Surely, under these circumstances counsel cannot be charged with knowledge of facts that have not been brought to their attention, nor does the obligation to investigate before serving discovery responses require counsel to search their files in every case in their office, closed or pending, to determine whether any of the law firm's prior clients were ever coworkers of another client.[5]

■ *Thoren* provides authority for excluding evidence based on a willfully false discovery response. It does not stand for the proposition that evidence may be excluded based on the mere failure to supplement or amend an interrogatory answer that was truthful when originally served. On the contrary, in *Rangel v. Graybar Electric Co.* (1977) 70 Cal.App.3d 943 [139 Cal.Rptr. 191] (*Rangel*), the very same panel that wrote *Thoren* distinguished its earlier holding on precisely the basis that there was no showing that the responding party had willfully concealed a witness's name.[6] The court cautioned in *Rangel* that "[i]n the absence of stronger evidence of wilful omission, to uphold the trial court's action barring plaintiff's rebuttal witness would permit the use of interrogatories as a trap, pinning a party for all time to an answer intended to reflect only that party's knowledge as of the date of answer. [Citation.]" (*Rangel*, at p. 949.) In the present case, Exxon used its interrogatories in precisely that fashion, by persuading the trial court to exclude the Bellamy declaration based solely on Biles's failure to amend his interrogatory answer promptly after his counsel discovered that Bellamy should have been identified as a witness. *Thoren* simply does not authorize that result.

## B. The Exclusion of the Bellamy Declaration Could Not Be Justified as a Discovery Sanction

■ The authority that empowers trial courts to impose evidentiary discovery sanctions on recalcitrant parties is embedded in subdivisions (k) and

---

[5] We do not intend to imply that if the same attorney had been involved in both Biles's case and Bellamy's 1996 case, that fact alone would necessarily dictate a different result. Additional factors would then have to be considered before a court could infer that the earlier discovery response was disingenuous. Such factors might include how close in time work on the different cases took place, whether both files were open and pending when the discovery response was made, whether the law firm or attorney employs a system to cross-reference witnesses and evidence in its various cases, and whether there existed other extenuating circumstances that might explain the failure to disclose as an innocent one.

[6] Even in *Thoren* itself, the court noted that in a situation involving "an inadvertently misleading answer . . . justice might dictate that, upon a proper showing, the answering party be relieved of his default and the interrogating party be protected by a continuance. [Citation.]" (*Thoren, supra,* 29 Cal.App.3d at p. 275.)

(*l*) of Code of Civil Procedure section 2030.[7] The relevant portions of these subdivisions are as follows:

"(k) . . . [¶] The party propounding the interrogatories may move for an order compelling response to the interrogatories. The court shall impose a monetary sanction under Section 2023 against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a response to interrogatories, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. *If a party then fails to obey an order compelling answers, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under Section 2023.* In lieu of or in addition to that sanction, the court may impose a monetary sanction under Section 2023.

"(*l*) If the propounding party, on receipt of a response to interrogatories, deems that . . . an answer to a particular interrogatory is evasive or incomplete, . . . that party may move for an order compelling a further response. This motion shall be accompanied by a declaration stating facts showing a reasonable and good faith attempt at an informal resolution of each issue presented by the motion. [¶] . . . [¶]

"The court shall impose a monetary sanction under Section 2023 against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a further response to interrogatories, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust.

"*If a party then fails to obey an order compelling further response to interrogatories, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under Section 2023.* In lieu of or in addition to that sanction, the court may impose a monetary sanction under Section 2023." (§ 2030, subds. (k), (*l*), italics added.)

---

[7] All further references to statutes are to the Code of Civil Procedure as it read in 2003, and will continue to read until mid-2005. Recent legislation has repealed and reenacted the statutes comprising the Civil Discovery Act, resulting in extensive renumbering of the affected statutes, but that legislation will not become operative until July 1, 2005. (Stats. 2004, ch. 182, §§ 22, 23, 64.) The changes are not intended to have any substantive effect on the law of civil discovery. (Stats. 2004, ch. 182, § 61.) When the legislation becomes operative, the substance of what is now section 2030, subdivisions (k) and (*l*), will be codified in new sections 2030.290 and 2030.300. (Stats. 2004, ch. 182, § 23.)

A trial court has broad discretion to impose discovery sanctions, but two facts are generally prerequisite to the imposition of nonmonetary sanctions such as the evidence sanction imposed here: (1) absent unusual circumstances, there must be a failure to comply with a court order,[8] and (2) the failure must be willful. (See, e.g., *R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 496 [89 Cal.Rptr.2d 353] [terminating sanctions properly imposed for repeated efforts to thwart discovery, including violation of two discovery orders].) Even where nonmonetary sanctions are called for, they " '. . . "should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery." [Citations.] " '. . . [¶] The sanctions the court may impose are such as are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks, but the court may not impose sanctions which are designed not to accomplish the objects of discovery but to impose punishment. [Citations.]' " [Citations.]' [Citation.]" (*Do it Urself, supra,* 7 Cal.App.4th at p. 35.)

Thus, when a party repeatedly and willfully fails to provide certain evidence to the opposing party as required by the discovery rules, preclusion of that evidence may be appropriate, even if such a sanction proves determinative in terminating the plaintiff's case. (*Juarez v. Boy Scouts of America, Inc., supra,* 81 Cal.App.4th at p. 390.) But " '[t]he *ratio decidendi* behind such cases[]' . . . is 'that a persistent refusal to comply with an order for the production of evidence is tantamount to an admission that the disobedient party really has no meritorious claim . . . .' [Citation.]" (*Ibid.,* quoting *Kahn v. Kahn* (1977) 68 Cal.App.3d 372, 382 [137 Cal.Rptr. 332], italics in original quoted source.) This rationale does not justify imposition of an evidence sanction based on the mere failure to supplement a response promptly when no order compelling further answers has been sought or entered.

Alternatively, section 2030, subdivision (m), provides that if a party amends an interrogatory answer in a manner that "substantially prejudice[s]" the propounding party, the latter may move for an order deeming the original

---

[8] Taken together, subdivisions (k) and (*l*) of section 2030 make clear that only after an order compelling responses or further responses to interrogatories has been obtained and violated can the court impose an issue sanction, an evidence sanction, or a terminating sanction. A few cases have approved the imposition of evidence and issue sanctions without a court order violation, but those cases involved egregious discovery abuses going far beyond the failure to supplement or amend a response in a timely fashion. (See *Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545 [51 Cal.Rptr.2d 311] [evidence and issue sanctions properly imposed without violation of order compelling production of documents, where requiring requesting party to seek such an order would have been futile in light of responding party's claim that requested documents had been stolen]; *Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 36 [9 Cal.Rptr.2d 396] (*Do It Urself*) [evidence sanctions appropriate despite absence of order compelling discovery, where sanctioned party concededly could not provide audit it had promised].)

answer binding, but only after making "a reasonable and good faith attempt" to resolve the issue informally. No such attempt was made here. Even when the motion is properly made, the order deeming the original answer binding is appropriate only if the responding party "fail[s] to show substantial justification for the initial answer." (*Ibid.*) The trial judge made no finding on that issue, and, as already discussed, the record indicates that Biles and his counsel did not learn about Bellamy's potential testimony until after the original answer was served. Finally, the statute also requires a showing that "the prejudice to the propounding party cannot be cured . . . by a continuance to permit further discovery." (*Ibid.*) Again, no such showing was made here.

### C. Biles Had No Statutory Duty to Amend or Supplement His Interrogatory Responses

■ The trial judge's comments at the hearing make clear that he viewed Biles as having a *duty* to supplement his interrogatory responses promptly upon the receipt of new information, even in the absence of any request or order, and that his exclusion of the Bellamy declaration stemmed at least in part from Biles's failure to do so. This conclusion was erroneous, because, as Exxon's counsel acknowledged at oral argument in this court, Biles had no such duty under California's discovery statutes.[9] (See generally Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2004) ¶ 8:1119, p. 8F (rev. # 1, 2000) ["The responding party need only provide such information as is available at the time the answers are prepared. There is *no* duty to update or amend the answers, either to correct errors or to include new information discovered later. [Citation.]" (Italics in original.)].)

Moreover, a rule precluding the use of evidence not previously disclosed in supplemental discovery responses to oppose a summary judgment motion would be inconsistent with case law holding that "factually void" discovery responses can be relied upon to shift the burden of proof to the opposing party. (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590, 592–593 [37 Cal.Rptr.2d 653]; see also *Scheiding v. Dinwiddie Construction*

---

[9] Under *federal* procedure, parties do have an affirmative duty to supplement their discovery responses upon the acquisition of new information. (Fed. Rules Civ.Proc., rule 26(e), 28 U.S.C. ["A party who has . . . responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired . . . [¶] . . . if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. . . ."]; see generally 8 Wright et al., Federal Practice & Procedure: Civil (2d ed. 1994) §§ 2048–2050, pp. 597–616; *id.* (2004 supp.) § 2049.1, pp. 156–158 [duty to supplement was broadened by 1993 amendments to rule 26].) This difference between California and federal discovery practice may shed some light on the origin of the misimpression that a duty to supplement exists under California law.

*Co.* (1999) 69 Cal.App.4th 64, 76–78 & fn. 2 [81 Cal.Rptr.2d 360].) If a party who fails to amend or supplement interrogatory responses can be categorically precluded from offering undisclosed information in opposition to a later filed summary judgment motion, the need for a burden-shifting rule would be eliminated. In its place would be a rule that compels the granting of a motion for summary judgment based on factually void discovery responses, because any attempt to fill the void with new evidence would be precluded. Exxon cites no authority for such a rule. Indeed, the reasoning underlying our opinion in *Scheiding v. Dinwiddie Construction Co.*, *supra*, 69 Cal.App.4th at pages 78–81, implies that the law is to the contrary.

We also note that the trial judge was incorrect in characterizing Biles as having promised, in his original response, to serve supplementary answers when appropriate. The response reserved the right to serve amended or supplemental answers—a right that is, in any event, expressly granted by statute (§ 2030, subd. (m))—but made no commitment to do so. Even if he had made such a promise, in the absence of an evidentiary sanction for discovery abuse imposed under subdivision (k) or (*l*) of section 2030, there is no general bar on introducing previously undisclosed evidence in opposition to a summary judgment motion.[10]

In short, to the extent that the trial judge's ruling excluding the Bellamy declaration was premised on the belief that Exxon was entitled either to an order deeming Biles bound by his original interrogatory answer, or to an evidentiary discovery sanction, those premises were in error. As of the date of the summary judgment hearing, the statutory prerequisites for the issuance of such an order or sanction had not been satisfied.

### D. The Bellamy Declaration Raised a Triable Issue of Fact as to the Negligence of Exxon, and the Motion for Summary Judgment Should Have Been Denied

On appeal, Exxon argues that even if the Bellamy declaration is considered, the judgment should still be affirmed, because the Bellamy declaration does not create a triable issue of fact with respect to Exxon's liability in this

---

[10] We express no opinion as to whether or not a monetary sanction would have been appropriate, as the factual record is not sufficient to enable us to make that determination. We note, however, that the trial judge did not find, and the record does not indicate, that Biles's counsel were aware until *after* Exxon's summary judgment motion was filed that Bellamy had knowledge of Biles's asbestos exposure at the Humble refinery. Accordingly, even if Biles had served an amended interrogatory answer at the earliest possible moment, immediately after Bellamy's deposition, Exxon still would have incurred the fees and costs involved in filing its summary judgment motion. Moreover, Exxon did not rely on Biles's original interrogatory responses in its motion. Nor, prior to filing the motion, did Exxon either request that Biles update his answers or move to compel further answers.

case. We begin our analysis of this question with a brief description of the legal context of plaintiff's premises liability theory.

■ In a series of cases beginning with *Privette v. Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*), the California Supreme Court increasingly restricted the circumstances under which premises owners and general contractors (hirers) can be held liable for injuries incurred by employees of independent contractors or subcontractors (contractors) while working on the hirer's premises. (See also *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253 [74 Cal.Rptr.2d 878, 955 P.2d 504] (*Toland*) [hirers are not liable to contractors' employees for failing to require contractor to take precautions to avert risk from inherently dangerous work]; *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235 [108 Cal.Rptr.2d 617, 25 P.3d 1096] (*Camargo*) [hirers' liability to contractors' employees cannot be premised on hirer's negligence in retaining incompetent contractor].) *Privette* rejected the application to contractors' employees of the doctrine of "peculiar risk" set forth in section 416 of the Restatement Second of Torts[11] (Restatement), and held that when "the injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to workers' compensation coverage, the doctrine of peculiar risk affords no basis for the employee to seek recovery of tort damages from the person who hired the contractor but did not cause the injuries. " (*Privette, supra*, 5 Cal.4th at p. 702.) The court reasoned principally that allowing such liability would undercut the policies underlying the workers' compensation system.

■ In *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 [115 Cal.Rptr.2d 853, 38 P.3d 1081] (*Hooker*), the court further extended the *Privette* line of authority, holding that "a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite . . . ." (*Id.* at p. 202.) The court in *Hooker* went on to note, however, that "a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries." (*Ibid.*, original italics.) Moreover, in a companion case to *Hooker*, the court confirmed that there is a basis for liability under section 414 of the Restatement in California, holding that "a hirer is liable to an employee of an independent contractor insofar as the hirer's provision of unsafe equipment affirmatively contributes to the employ-

---

[11] "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." (Rest.2d Torts, § 416.)

ee's injury." (*McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219, 222 [115 Cal.Rptr.2d 868, 38 P.3d 1094], fn. omitted.)[12]

■ Thus, the court has made clear that the policies underlying the limitations on the peculiar risk doctrine are not violated when a hirer is held liable to a contractor's employee based on the hirer's own affirmative negligence. "Imposing tort liability on a hirer of an independent contractor when the hirer's conduct has affirmatively contributed[13] to the injuries of the contractor's employee is consistent with the rationale of our decisions in *Privette, Toland* and *Camargo* because the liability of the hirer in such a case is *not* ' "in essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor." ' [Citation.] To the contrary, the liability of the hirer in such a case is *direct* in a much stronger sense of that term." (*Hooker, supra,* 27 Cal.4th at pp. 211–212, original italics; see also *Ray v. Silverado Constructors* (2002) 98 Cal.App.4th 1120, 1128–1129 [120 Cal.Rptr.2d 251].)

Indeed, nothing in section 409 of the Restatement[14] purports to absolve a hirer from liability *for the hirer's own negligent acts*, merely because a contractor happens to be on the scene at the time, or because the injured party happens to be employed by that contractor. Thus, whether or not there is liability under Restatement section 416, or any other exception to Restatement section 409, is not relevant when the direct negligence at issue is that of the hirer, not the contractor. (See *Slater v. Skyhawk Transp., Inc.* (D.N.J. 1999) 187 F.R.D. 185, 210 [distinguishing issue of hirer's liability for negligence of contractor, based on premises liability theory, from premises owner's direct liability for its own negligent conduct]; *Chugach Electric Association v. Lewis* (Alaska 1969) 453 P.2d 345, 348–349 [same].) Instead, the hirer's liability for its own negligence is covered by the principles enunciated in *Hooker* and *McKown,* as well as by general principles of

---

[12] Consistent with this view, courts in other states have found liability under Restatement section 414 when the negligence of a hirer's employees has contributed directly to injuries suffered by a contractor's employee. (See, e.g., *Tillman v. Great Lakes Steel Corp.* (E.D.Mich. 1998) 17 F.Supp.2d 672 [applying Michigan law]; *Ahl v. Stone Southwest, Inc.* (Fla.Dist.Ct.App. 1995) 666 So.2d 922; *Cuffe v. Sanders Const. Co., Inc.* (Alaska 1988) 748 P.2d 328.)

[13] "Such affirmative contribution need not always be in the form of actively directing a contractor or contractor's employee. There will be times when a hirer will be liable for its omissions. For example, if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury." (*Hooker, supra,* 27 Cal.4th at p. 212, fn. 3.)

[14] Restatement section 409 provides that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission *of the contractor or his servants.*" (Italics added.)

California tort law regarding the duty of premises owners to persons coming upon their land.[15]

■■■ In short, if a hirer's own employees, working side-by-side with the employees of a contractor, negligently injure one of the contractor's employees, the hirer may be held liable under the normal principles of respondeat superior for its own employees' negligence. Nothing in the *Privette* line of cases is to the contrary, nor do we understand Exxon to be arguing otherwise on this appeal. Applying these principles, the Bellamy declaration clearly raises a triable issue of fact regarding whether Exxon may be liable in this case based on the affirmative acts of Exxon's own employees (or rather, those of its predecessor in interest, Humble) that contributed to Biles's asbestos exposure.

Nevertheless, Exxon argues to the contrary that under *Hooker, supra,* 27 Cal.4th 198, Exxon cannot be held liable based on the actions of its employees in blowing asbestos dust towards Biles, because according to the Bellamy declaration, the dust itself was created by the actions of the subcontractor by whom Biles was employed. Exxon argues that this means the hazard that exposed Biles to harm was not created by its own exercise of control over the workplace. This argument construes the nature of the hazard too narrowly, as being the mere existence of the asbestos dust, rather than its presence in the air. The Bellamy declaration creates a triable issue of fact as to whether the presence of asbestos dust in the air in Biles's vicinity was at least to some extent the result of the acts of Exxon's own employees.

■■■ Exxon's argument also construes *Hooker* to impose liability only for a hazard created in its entirety by the premises owner. Exxon cites no authority for the proposition that the potential for liability under *Hooker* is thus limited. On the contrary, as already noted, *Hooker* itself states that "a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries." (*Hooker, supra.* 27 Cal.4th at p. 202, original italics.) Under comparative negligence principles, we see no impediment to imposing premises liability on a hirer whose employees' own actions contribute to or exacerbate a hazard, even if the hazard was created at least in part by the plaintiff's employer.

Finally, Exxon argues that Bellamy cannot establish he had personal knowledge as to who employed the people he saw blowing the asbestos

---

[15] See, e.g., *Krongos v. Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 392–395 [9 Cal.Rptr.2d 124]; *Osborn v. Mission Ready Mix* (1990) 224 Cal.App.3d 104, 122 [273 Cal.Rptr. 457]; *Williams v. Carl Karcher Enterprises, Inc.* (1986) 182 Cal.App.3d 479 [227 Cal.Rptr. 465], overruled on other grounds, *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548 [34 Cal.Rptr.2d 607, 882 P.2d 298].

dust towards himself and Biles. Exxon seeks to cast doubt on the credibility of the Bellamy declaration by noting that whereas Bellamy contends he saw the name Exxon on the employees' hard hats, in fact the company that owned the premises was called Humble Oil at the time, and the name Exxon was not yet in use. The trial judge declined to consider this argument, because the date of the name change from Humble to Exxon was not in evidence. In any event, these arguments go to the credibility and weight of the Bellamy declaration, and thus cannot prevent it from creating a triable issue of fact. (*Estate of Housley* (1997) 56 Cal.App.4th 342, 359–360 [65 Cal.Rptr.2d 628].)

## IV.

### DISPOSITION

The judgment is reversed. Costs on appeal are awarded to appellant.

Kline, P. J., and Haerle, J., concurred.