Filed 9/8/25  Wilmot v. Cal. Department of Transportation CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RONALD WILMOT et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF TRANSPORTATION, <br><br> Defendant and Appellant. | 2d Civ. No. B339072 <br> (Super. Ct. No. 22CV00456) <br> (Santa Barbara County) |

Ronald Wilmot was injured when he was struck by a car while traversing a bridge on his bicycle.  He sued the driver of the car and the California Department of Transportation (Caltrans).  The jury awarded Wilmot substantial damages against both defendants.  Caltrans alone appeals.  The trial court prejudicially erred when it excluded Caltrans' witnesses as a discovery sanction.  We reverse.

FACTS

*The Accident*

On the morning of January 3, 2021, 84 year old Wilmot was riding his bicycle southbound on highway U.S. 101 in Santa Barbara County. Wilmot and the friends riding with him proceeded onto the Arroyo Quemado bridge (bridge). Warning lights flashed above a sign that said, "Watch for Bicyclist on Bridge." Susan McCurnin was driving across the bridge in a Honda sedan. She crashed into Wilmot, causing Wilmot to suffer severe injuries.

*Lawsuit and Verdict*

Wilmot sued McCurnin and Caltrans. The jury returned a verdict in favor of Wilmot and against McCurnin and Caltrans for $3.8 million. The jury awarded $750,000 for past medical expenses and $80,000 for future medical expenses. The jury found McCurnin 70 percent at fault and Caltrans 30 percent at fault. McCurnin is not appealing.

DISCUSSION

*I. Exclusion of Caltrans Witnesses*

Caltrans contends the trial court erred in excluding its witnesses.

(a) Background

The evening before Caltrans was to begin its defense case, Wilmot moved to exclude Caltrans' lay witnesses as not identified in Caltrans' responses to requests for admissions and related interrogatories. The witnesses were Caltrans personnel who were expected to testify that the bridge was routinely inspected by Caltrans engineers; that it was inspected multiple times between 2011 and 2021; and it always received a rating of "good."

Wilmot's counsel initially complained only about Caltrans' response to a request to admit it had no facts to support its claim of design immunity. Wilmot's counsel complained that Caltrans denied, and in answering an attendant interrogatory, referred only to its experts. Counsel pointed out Caltrans' proposed witnesses are not experts. The trial court told the parties to meet and confer, and that it would take the matter up in the morning.

When court resumed the next morning, Wilmot's counsel expanded his argument beyond Caltrans' discovery responses to its claims of design immunity. Wilmot's counsel stated: "I sent requests for admissions and the form interrogatory asking Caltrans to identify all the witnesses who were going to talk about the dangerous condition, the warnings, the responsibilities and theinspections, the maintenance, the dangerous condition being a substantial factor, design immunity, government immunity, and the accidents." Counsel complained that in answering, Caltrans pointed only to experts. None of Caltrans' lay witnesses were identified.

Caltrans' counsel asked for time to brief the issue. The trial court denied the request. When Caltrans' counsel pointed out that there was no motion to compel and no supplemental discovery, the court replied that it was not necessary.

In granting the motion to exclude, the trial court found Caltrans failed to properly engage in the discovery process. The court declined to make a ruling on whether it was intentional or inadvertent. The court found that surprising the parties with the witnesses in the middle of trial is extremely prejudicial.

(b) Caltrans' Response

Caltrans' response to the request for admissions contained introductory comments as follows:

3

"It should be noted that this discovery is premature in that [Caltrans] has not yet answered [Wilmot's] complaint, as [Caltrans'] Demurrer, currently scheduled to be heard in October 2022, will address various pleading deficiencies.  Accordingly, [Caltrans'] defenses, both special and affirmative, as well as denials, have not been made in this action.  Consequently, [Caltrans] currently has no answers to any and all requests pertaining to defenses and denials.

"It should also be noted that [Caltrans] has not fully completed investigation of the facts relating to this case, has not fully completed discovery, and has not completed preparation for trial.  All answers contained herein are based only upon such information which is presently available and specifically known to [Caltrans] and only those contentions which presently occur to [Caltrans].  It is anticipated that further discovery, investigation, legal research, and analysis will supply additional facts, add new meaning to known facts, as well as establish entirely new factual contentions, all of which may lead to substantial additions to, changes in, and variations from the contentions herein set forth."

Caltrans' response to the interrogatories contained similar comments.  Each response to the request for admissions and interrogatories incorporated the comments by reference.

Many of Caltrans' answers to the interrogatories stated that Caltrans' experts will provide testimony on the issue.  None of the Caltrans' responses mentioned the lay witnesses excluded by the trial court.

### (I) Analysis

A party may respond to interrogatories with the information it has at the time and is not obligated to keep the opposing party apprised of any changes.  (*Biles v. Exxon Mobile*

4

*Corp.* (2004) 124 Cal.App.4th 1315, 1325 (*Biles*).) In the absence of a willfully false discovery response, the failure of a party to amend its interrogatories is not a ground for excluding that party's witnesses. (*Ibid.*) Here there is no evidence of a willfully false discovery response.

Thus, in *Biles, supra*, 124 Cal.App.4th 1315, plaintiff alleged he was exposed to asbestos dust on defendant's premises. Defendant moved for summary judgment on the ground plaintiff could not show he had been so exposed. Plaintiff countered with an affidavit by a coworker stating that while working with plaintiff on defendant's premises, defendant's employees blew asbestos dust in their direction. Defendant objected to the declaration on the ground that the coworker had not been identified in the answer to an earlier interrogatory seeking the names of persons with knowledge of plaintiff's exposure to asbestos dust on defendant's premises. The trial court excluded the declaration and granted defendant summary judgment. In reversing, the Court of Appeal began by stating, "In deciding this appeal we deconstruct a civil discovery 'urban legend' that a responding party has an affirmative duty to supplement responses to interrogatories if and when new information comes into that party's possession, particularly if the party reserved the right to amend or supplement the earlier responses." (*Id.* at pp. 1318-1319 [fn. omitted].) The court held plaintiff had no duty to supplement his discovery responses. (*Id.* at p. 1328; see also *Rangel v. Graybar Electric Co.* (1977) 70 Cal.App.3d 943, 949 ["In the absence of stronger evidence of wilful omission, to uphold the trial court's action barring plaintiff's rebuttal witness would permit the use of interrogatories as a trap, pinning a party for all

5

time to an answer intended to reflect only that party's knowledge as of the date of answer"].)

*Biles*, *supra*, 124 Cal.App.4th 1315, is directly on point. Caltrans made it abundantly clear that it was responding to Wilmot's discovery requests propounded at the pleading stage of the litigation; that it had not completed its investigation and discovery; and that its responses are limited to presently available information. Even without such express disclaimers, Wilmot knew or should have known that because he propounded the discovery at the early stages of the litigation, Caltrans' responses would very likely be based on limited information. Wilmot had the option of conducting further discovery, including supplemental interrogatories. (Code Civ. Proc., § 2030.070.) Wilmot did not do that. Wilmot cannot forego discovery and then claim surprise at trial.

Wilmot attempts to distinguish *Biles*. He claims Caltrans failed to show that it did not provide willfully false discovery responses. But a trial court's finding of a willfully false discovery response must be supported by substantial evidence. (*Rangel v. Graybar Electric Co., supra*, 70 Cal.App.3d at p. 948.) Thus, it is Wilmot's burden to produce the evidence. Wilmot produced no such evidence, and the trial court made no such finding.

Wilmot argues *Biles* did not consider the inherent power of the trial court to exclude evidence to ensure a fair trial. (Citing *Cottini v. Enloe Medical Center* (2014) 226 Cal.App.4th 401, 425.) But here the trial court based its decision on a finding of discovery abuse, not its inherent power to ensure a fair trial. Moreover, there is no basis for the court to exclude Caltrans' witnesses under its inherent power. Wilmot cannot claim surprise when he did not fully exercise his discovery rights.

Finally, Wilmot seeks to distinguish *Biles*, *supra*, 124 Cal.App.4th 1315, on the ground that it involved summary judgment, not an attempt to introduce undisclosed witnesses in the middle of trial. But the holding in *Biles* is that the trial court cannot exclude witnesses based on the failure to supplement answers to interrogatories. That holding applies in all phase of the trial. Wilmot quotes *Biles* out of context. *Biles* states, "Here, in contrast, the record indicates that no trial date had been set when the summary judgment motion was filed. Moreover, the summary judgment motion was filed only five months after [plaintiff's] interrogatory response was served, and the Bellamy declaration was submitted in opposition two months after the motion was filed." (*Id.* at p. 1324.) *Biles* was simply contrasting a different case in which a willfully false interrogatory response was not discovered until after the jury was impaneled and a continuance would not be appropriate. *Biles* was suggesting that because its case involved summary judgment, the trial court should have granted a continuance for further discovery.

(ii) Prejudice

Wilmot claims Caltrans cannot show prejudice because it failed to make an offer of proof. Caltrans points to its opening statement to the jury in which it previewed its witnesses' testimony.

Evidence Code section 354 provides in part:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that:

7

"(a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means;

"(b) The rulings of the court made compliance with subdivision (a) futile . . . ."

The purpose of an offer of proof is twofold. It gives the trial court an opportunity to change its ruling in the event the relevance of the evidence becomes clear later in the trial, and it allows the reviewing court to assess prejudice on appeal. (*People v. Whitt* (1990) 51 Cal.3d 620, 648.) As to the trial court, it was not concerned with the substance of the evidence. It excluded the evidence as a discovery sanction. An offer of proof is not required where it would be futile. (Evid. Code, § 354, subd. (b).) If there is any doubt about futility, the doubt was resolved when the trial court denied Caltrans' request to brief the issue. As to our review on appeal, Evidence Code section 354, subdivision (a) does not always require an offer of proof. The substance, purpose, and relevance of the excluded evidence may be made known "by any other means." (*Id.,* § 354, subd. (a).) Here Caltrans points to its opening statement to the jury in which the evidence it planned to produce was outlined. In fact, the opening statement is a kind of offer of proof. It is sufficient for our review.

Wilmot argues that Caltrans' proposed witnesses would not refute what he characterizes as the "core dangerous conditions": substandard lane widths, visual obstructions, and inadequate warning signs. They can only testify that the bridge was well maintained, routinely inspected and always received a rating of "good." The jury could conclude the bridge would not have received a rating of "good" if the bridge was dangerous for its intended use by cars and bicycles. The exclusion of the

8

testimony cut to the heart of Caltrans' defense. It is reasonably probable Caltrans would have obtained a more favorable result in the absence of the error. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574.)

Moreover, in moving to exclude the evidence, Wilmot's counsel did not inform the trial court that Caltrans' discovery responses were preliminary, and the court refused to allow Caltrans the opportunity to brief the issue. Fundamental principles of due process require notice and an opportunity to be heard. (*Monarch Healthcare v. Superior Court* (2000) 78 Cal.App.4th 1282, 1286.) The opportunity to be heard includes the opportunity to brief an issue before discovery sanctions are imposed. (*Ibid.*) Where the trial court improperly grants a wholesale exclusion of evidence as a discovery sanction, the matter is reversible per se. (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677.) There are occasions where discovery can occur even in the middle of trial, either in the evening or on a weekend, obviating a reversal. Unfortunately, that did not happen here.

Although we reverse the judgment for a new trial, we discuss other issues raised in this appeal for the benefit of the trial court and the parties on retrial.

*II. Medical Expenses*

Caltrans contends the trial court erred in admitting the full amount billed as damages for medical expenses.

Wilmot concedes that under *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 567 (*Howell*), where a medical provider has, by prior agreement with an insurer, accepted less than the full payment, evidence of the full amount billed is not relevant on the issue of past medical expenses.

Wilmot argues, however, that under *Howell*, Caltrans' remedy was to move for a new trial on the issue of damages. (*Ibid.*) Wilmot claims Caltrans waived the issue by failing to make a timely motion for a new trial. Because we are reversing for a new trial generally, we need not consider the issue of waiver.

### *III. Evidence of Subsequent Remedial Measures*

Caltrans contends the trial court erred in admitting evidence of subsequent remedial measures.

The evidence was a page of Caltrans' traffic investigation report made in response to Wilmot's accident. The report provided in part:

"On May 13, 2021, the California Traffic Control Devices Committee (CTCDC) approved the use of the word message 'Watch For, Bicyclist on Bridge' to replace the existing "When Flashing" wording. They also approved the continued use of the existing push button sign messages for the bicyclists to activate the flashers: 'Bicyclist: Push Button To Activate Lights To Advise Motorist Of Bicyclist' and 'Push Button for Flashers'.

"Sections 2C.03 and 2C.49 of the 2014 CA [Manual on Uniform Traffic Control Devices] Rev. 6 states that warning signs associated with bicyclists may have a fluorescent yellow-green background. It is recommended that the new 'Watch For' signs use the fluorescent yellow-green background. Section 2C.50 says the mixing of standard yellow and fluorescent yellow-green backgrounds within a selected area should be avoided. Therefore, it is recommended that the existing W11-1/W16-1P (Bike Symbol/Share the Road) sign approaching the bridge also be changed to fluorescent yellow-green.

"To reduce sign clutter so the driver can focus on the more critical signs, it is recommended that the 'Slow Traffic Keep

10

Right' sins be removed. It is not an essential sign and could encourage lane changing in an area where it is not recommended or allowed."

Evidence Code section 1151 provides: "When, after the occurrence of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the event."

In *Fox v. Kramer* (2000) 22 Cal.4th 531 (*Fox*), a case involving a medical malpractice action, the question was whether plaintiffs could discover a draft preliminary report of the incident prepared for the Department of Health Services. The Court of Appeal held that Evidence Code section 1151 barred discovery. Our Supreme Court held that the case is governed by Evidence Code section 1157, a section specifically limiting the discovery and use of records of committees hearing the responsibility for the evaluation and improvement of medical care. The Court interpreted the section as not barring the discovery of the report in question. Turning its attention to Evidence Code section 1151, on which the Court of Appeal relied, our Supreme Court stated, "Evidence Code section 1151 plainly refers to 'remedial or precautionary measures,' not to mere reports or investigations conducted after an accident or other event resulting in injury. By its terms, it would appear to include only *subsequent actions taken to repair or correct* a problem identified by an investigation -- not the factual inquiries undertaken to determine whether such repair or correction was necessary. Evidence Code section 1151 also refers to measures 'which, if taken previously, would have tended to make the event less likely to occur.' (Italics added.) Of

11

course, reports or investigations relating to an incident could not have been made *prior thereto*." (*Id*. at p. 544.)

Although both parties rely on *Fox*, *supra*, 22 Cal.4th 531, it is not a satisfactory exposition of Evidence Code section 1151. *Fox* is principally a discussion of Evidence Code 1157, and its discussion of Evidence Code section 1151 is perfunctory. Nevertheless, *Fox* makes it clear that mere reports or investigations are not barred by Evidence Code section 1151. (*Fox*, *supra*, 22 Cal.4th at p. 544.)

Here the exhibit in question contains more than reports and investigations. It contains a list of projects that were approved by Caltrans. The approvals themselves fall within the category of "*subsequent actions taken to repair or correct a problem*." (See *Fox*, *supra*, 22 Cal.4th at p. 544.) Thus, although references to reports and investigations in the exhibit are admissible, references to approvals must be redacted.

DISPOSITION

The judgment is reversed. Costs on appeal are awarded to appellant.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

BALTODANO, J.

CODY, J.

12

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Erin E. Holbrook, Chief Counsel, Ardine Zazzeron, Assistant Chief Counsel, G. Michael Harrington, Deputy Chief Counsel, Casper K. Gorner, for Defendant and Appellant.

The Ehrlich Law Firm and Jeffrey I. Ehrlich; Mardirossian Akaragian, Lawrence D. Marks, Garo Marirossian, Adam Feit; Law Offices of Bradford D. Brown and Bradford D. Brown, for Plaintiffs and Respondents.