[No. H025934. Sixth Dist. Mar. 29, 2005.]

GUY PAUL BROWNE, Plaintiff and Appellant, v.
TURNER CONSTRUCTION COMPANY, et al., Defendants and
Respondents.

■■■■■■■■■■

## COUNSEL

Law Offices of Daniel U. Smith, Daniel U. Smith; Jones, Clifford, Johnson & Johnson and J. Kevin Morrison for Plaintiff and Appellant.

Stone, Rosenblatt & Cha, Gregg S. Garfinkel and Laurence F. Dunn III for Defendants and Respondents.

## OPINION

**RUSHING, P. J.**—Defendant Intel Corporation (Intel) hired defendant Turner Construction Company (Turner) to act as general contractor on a construction project. Turner hired Superior Automatic Sprinkler Co. (Superior) to install a fire sprinkler system. Plaintiff Guy Paul Browne, an employee of Superior, was injured in a fall from a ladder while working on the project. He brought this action against Turner and Intel, claiming that they acted negligently in removing from the work area, or causing to be removed, two means by which the fall could have been prevented, i.e., a system of safety lines intended to prevent just such injuries, and some hydraulic lifts (elevated work platforms) that would have permitted plaintiff to do the work without a ladder. The trial court granted summary judgment for defendants on the ground that their conduct did not affirmatively contribute to plaintiff's injuries within the holding of *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 202 [115 Cal.Rptr.2d 853, 38 P.3d 1081] (*Hooker*). We hold that this was error; the furnishing and abrupt withdrawal of safety equipment could be found to constitute negligent performance of a voluntary undertaking, affirmatively contributing to plaintiff's injuries and thereby subjecting defendants to liability. Accordingly, we will reverse the judgment.

### BACKGROUND

Plaintiff alleged in his complaint that on September 13, 2000, Turner and Intel caused him to fall and suffer injuries by negligently owning, maintaining, operating, and controlling a certain construction site. Intel and Turner jointly answered the complaint, generally denying its allegations and raising

affirmative defenses not pertinent here. Defendants propounded interrogatories asking plaintiff to state all facts on which he based his contention that they were liable for his injuries. He responded that while discovery and investigation were continuing, he believed Intel had required to be removed, and Turner had removed, "the hydraulic lifts from the part of the project on which plaintiff was working, thereby requiring him to use a ladder as a work platform." He further asserted that his injuries resulted from each defendant's "negligently retained control of the subject jobsite."

In December 2002, defendants jointly moved for summary judgment. In their statement of undisputed facts they asserted that Turner had been the general contractor on a project for Intel; that plaintiff's employer, Superior, had been hired by Turner to install a fire sprinkler system; that the contract between Turner and Superior placed ultimate responsibility for injury prevention upon Superior; and that plaintiff was injured when he fell about nine feet from a ladder on which he was standing in an attempt to install some overhead sprinkler pipe in an area known as the copper gowning room. Defendants acknowledged, and made no attempt to refute, plaintiff's assertion that they had removed hydraulic lifts from the work area. They asserted various facts intended to show that they did not negligently supervise any relevant aspect of the work.

In opposition to the motion, plaintiff cited his deposition testimony that he had been required to use a ladder at the time of his injury "because Turner had removed the scissor lifts" from the floor he was working on. One of his coworkers testified that Intel and Turner had wanted the lifts out of the room as part of a process by which "as the room was getting cleaner, they kept moving things, equipment and everything, out of there." Plaintiff also referred to a "fall protection system," which defendants had installed, of catenary (suspended) anchoring cables to which workers would secure or "tie off" their safety lanyards. He noted that defendants themselves had a rule requiring all workers to "tie off" when their feet were more than six feet above the ground. Defendants, however, had removed the fall protection system from the copper gowning room two months before he was injured, so that on the date of his fall, "there was nothing for [him] to 'tie off' to." Plaintiff asserted that through this conduct, defendants had effectively "determin[ed]" that he would work in violation of the tie-off rule.

Defendants raised numerous evidentiary objections to plaintiff's opposition (see pt. III, *post*), but made no attempt to refute the propositions that (1) they had originally furnished the catenary anchor system, then discontinued it

while overhead work remained to be performed; and (2) they had also removed the scissor lifts, or caused them to be removed, immediately before plaintiff sustained his injuries.

The trial court issued a lengthy order in which it concluded that there was no evidence of any negligence by defendants that "affirmatively contributed" to plaintiff's injuries as required by *Hooker, supra,* 27 Cal.4th at p. 202. The court wrote that plaintiff was "unable to point to any affirmative action that defendants took which directly contributed to plaintiff's injury." The court found it "undisputed that defendants retained control over safety conditions, and removed the scissors lift and tie off anchors from the room in which plaintiff was working before he began to work on the day of the accident . . . ." This conduct, however, "did not affirmatively contribute to plaintiff's injury," because there was "no claim that the ladder was defective, or that defendants ordered plaintiff to work without tying off." "There is, at most, evidence that defendants were aware of an unsafe practice, i.e., no tie off anchors available to plaintiff while working more than [six] feet above ground, and failed to exercise the authority they retained to correct it, i.e., put the anchors back in. But there is no evidence that defendants['] exercise of retained control, i.e., the removal of the anchors or the scissors lift, affirmatively contributed to the dangerous practice of climbing a ladder more than [six] feet off the ground without first tying off."

The court entered judgment for defendants. Plaintiff filed this timely appeal.

## I. *Summary Judgment*

Code of Civil Procedure section 437c entitles a defendant to summary judgment upon demonstrating that "one or more elements of [the plaintiff's] cause of action . . . cannot be established." (Code Civ. Proc., § 437c, subd. (p)(2); see *id.,* subd. (*o*)(1).) Courts have recognized two ways in which a defendant may make such a showing. The first, which might be called "positive refutation," consists of "present[ing] evidence that," in the absence of conflicting evidence from the plaintiff, "*preclude[s]* a reasonable trier of fact from finding" a fact necessary to the plaintiff's cause of action. (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003 [4 Cal.Rptr.3d 103, 75 P.3d 30], italics added (*Kahn*).) In other words, the defendant comes forward with evidence concerning the *actual events at issue* and establishing a version of those events that is incompatible with the plaintiff's claims. Alternatively, the moving defendant may show by competent proofs (typically derived from discovery) that the *plaintiff lacks the*

*evidence* to prove a necessary fact. In this method, which might be called "evidentiary negation," the defendant need not affirmatively prove anything about what actually occurred; it is enough to show that there is insufficient evidence of what occurred, or insufficient evidence favorable to the plaintiff, to establish a necessary element of the cause of action. ■ Either way, if the defendant presents evidence sufficient to meet this threshold burden, the burden shifts to the plaintiff "to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p)(2).) However, "[t]he burden of persuasion remains" with the defendant as moving party. (*Kahn, supra,* 31 Cal.4th at p. 1003.) ■ An appellate court "review[s] the record and the determination of the trial court de novo. [Citation.]" (*Ibid.*)

Defendants' motion was premised upon plaintiff's claimed inability to prove an indispensable part of his cause of action, i.e., that their conduct "affirmatively contributed to [his] injuries, or to the allegedly-hazardous condition which precipitated his fall . . . ." Thus the pivotal question, as framed by defendants and filtered through the principles just noted, is whether defendants presented evidence "preclud[ing]" a finding that they "*affirmatively contributed*" to his injuries, or affirmatively demonstrating that plaintiff "lacks the evidence to prove" such affirmative contribution. We review de novo the trial court's affirmative answer to that question.

## II. *Affirmative Contribution*

Over the past 11 years the California Supreme Court has rendered a line of decisions limiting the liability of a hirer of an independent contractor for injuries to one of the contractor's employees. Prior to these cases it was widely held that the hirer could be liable to such workers for breach of a duty, often referred to as "nondelegable," to protect workers from harm arising from a "peculiar risk" inherent in the work. (See *Van Arsdale v. Hollinger* (1968) 68 Cal.2d 245, 254 [66 Cal.Rptr. 20, 437 P.2d 508], overruled in *Privette v. Superior Court* (1993) 5 Cal.4th 689, 696, 702, fn. 4 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*); Rest.2d Torts, § 416.[1]) If this doctrine were still available, it would clearly apply here, because the work in which plaintiff was engaged inherently involved a clear and distinct risk of falling, against which defendants might have been under a duty to require that precautions be taken.

However, in *Privette, supra,* 5 Cal.4th at pages 696, 698–702, the court held that imposing liability on such a basis was inconsistent with the policies underlying the workers' compensation laws, which "automatically" afford the

---

[1] All section references are to the Restatement Second of Torts unless otherwise indicated.

injured worker a remedy against his employer, but exempt the employer from liability in tort. In *Toland v. Sunland Housing Group* (1998) 18 Cal.4th 253 [74 Cal.Rptr.2d 878, 955 P.2d 504] (*Toland*), the court reaffirmed that holding and extended it to a variation on peculiar risk theory, in which liability is predicated not on the hirer's failure to *require the contractor* to take precautions (see § 416), but on the hirer's *own* failure to *take* "special precautions" against the risk in question (see § 413). The court noted that liability under section 416 had sometimes been characterized as "vicarious" while liability under section 413 had been called "direct." (*Toland, supra,* 18 Cal.4th at p. 264; see *id.* at p. 259.) However, it declared this distinction "misleading" because "liability under these sections is neither purely direct nor purely vicarious." (*Id.* at p. 264.) Under both sections, it held, "the hiring person's liability is cast in the form of the hiring person's breach of a duty to see to it that special precautions are taken to prevent injuries to others; in that sense, the liability is 'direct.' Yet, peculiar risk liability is *not a traditional theory of direct liability for the risks created by one's own conduct*: Liability under both sections is in essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor, because *it is the hired contractor who has caused the injury by failing to use reasonable care* in performing the work." (*Id.* at p. 265, italics added.) Responding to Justice Werdegar's partial dissent, Justice Kennard noted for the majority that it is always possible to characterize liability as " 'direct' " by "concocting a duty in a particular situation to *prevent another from acting negligently . . . .*" (*Id.* at p. 265, fn. 3, italics added.) The dissent, she wrote, "refuses to acknowledge any distinction between this artificial 'direct liability' and the liability imposed on the hiring person for injuries resulting from the hiring person's own conduct, such as, for example, concealing a hidden danger . . . or insisting on use of an unsafe method to execute the work." (*Ibid.*) Under *Privette*, the court said, the hirer "has *no* obligation to specify the precautions an independent hired contractor should take for the safety of *the contractor's employees*." (*Id.* at p. 267.) It described *Privette* as holding that "employees of an independent contractor, because of the availability of workers' compensation benefits, cannot seek recovery under section 413 of the Restatement Second of Torts." (*Id.* at p. 268.) "As we concluded in *Privette, supra,* 5 Cal.4th 689," Justice Kennard wrote, "it is illogical and unfair that a landowner or other person who hires an independent contractor should have greater liability for the independent contractor's negligence towards the contractor's employees than the independent contractor whose liability is limited to providing workers' compensation coverage." (*Id.* at p. 270.)

In *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235 [108 Cal.Rptr.2d 617, 25 P.3d 1096] (*Camargo*), the court extended *Toland* and *Privette* to bar a claim that was brought under the theory that the defendant *negligently hired*

the independent contractor who in turn employed the plaintiffs' decedent as a tractor driver. (See § 411.) The court reaffirmed the underlying rationale that "the hirer should not have to pay for injuries caused by the contractor's negligent performance because the workers' compensation system already covers those injuries." (*Camargo, supra*, 25 Cal.4th at p. 1239.) The court rejected the negligent hiring theory for the same reasons it rejected the peculiar risk theories at issue in *Privette* and *Toland*, i.e., while the proposed liability might be "direct" in some sense, it was essentially vicarious or derivative in that it depended on the negligent conduct of the contractor, and it was unfair to subject the hirer to civil liability while the actor primarily responsible for the injury was subject only to the limited liability imposed by workers' compensation law. (*Camargo, supra*, 25 Cal.4th at p. 1244.)

In *Hooker, supra*, 27 Cal.4th 198, the question was whether the hirer could be liable for negligent exercise of a retained power to control the performance of the work. (See § 414.) The court held "that a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite, but that a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control affirmatively contributed to the employee's injuries." (*Hooker, supra*, 27 Cal.4th at p. 202, italics omitted.) The court approved the analysis in a First District case holding that mere *failure to exercise* a retained power of control cannot, by itself, make the hirer liable, because the hirer (which in that case was the general contractor) " '*owes no duty of care* to an employee of a subcontractor *to prevent or correct unsafe procedures or practices to which the contractor did not contribute by direction, induced reliance, or other affirmative conduct.* The mere failure to exercise a power to compel the subcontractor to adopt safer procedures does not, without more, violate any duty owed to the plaintiff. Insofar as section 414 might permit the imposition of liability on a general contractor for *mere failure to intervene* in a subcontractor's working methods or procedures, without evidence that the general contractor *affirmatively contributed to the employment* of those methods or procedures, that section is inapplicable to claims by subcontractors' employees against the general contractor.' [Citation.]" (*Hooker, supra*, 27 Cal.4th at p. 209, quoting *Kinney v. CSB Construction, Inc.* (2001) 87 Cal.App.4th 28, 39 [103 Cal.Rptr.2d 594], italics added.) "[T]he imposition of tort liability on a hirer should depend on whether the hirer *exercised* the control that was retained *in a manner* that *affirmatively contributed* to the injury of the contractor's employee. 'We are persuaded that the holdings of *Privette* and *Toland* should also apply to employees' claims under section 414 at least where, as here, (1) the sole factual basis for the claim is that the hirer failed to exercise a general supervisory power to require the contractor to correct an unsafe procedure or condition of the contractor's own making, and (2) there is no evidence that the hirer's conduct contributed in any way to the

contractor's negligent performance by, e.g., inducing injurious action or inaction through actual direction, reliance on the hirer, or otherwise. The fairness rationale at the core of *Privette* and *Toland* applies equally to preclude imposition of liability on a hirer for mere failure to exercise a general supervisory power to prevent the creation or continuation of a hazardous practice, where such liability would exceed that imposed on the injured plaintiff's immediate employer, who created the hazard.' [Citation.]" (*Hooker, supra*, 27 Cal.4th at pp. 210–211, quoting *Kinney, supra*, 87 Cal.App.4th at p. 36, some italics added.)

The accident at issue in *Hooker* occurred when the plaintiff's decedent, while operating a construction crane on a highway project, attempted to swing the boom after neglecting to reextend stabilizing outriggers, which he had retracted to allow other vehicles on the project. (*Hooker, supra,* 27 Cal.4th at p. 202.) The plaintiff cited the defendant's own rules requiring its supervisors to recognize, anticipate, and correct unsafe conditions, and deposition testimony by the defendant's senior representative on the project to the effect that he was aware of the retraction of the outriggers, recognized its hazards, and possessed the power to compel safe procedures. (*Ibid.*) The court noted the similarity of these facts to *Kinney*, where the plaintiff was injured while engaged in a practice the hirer's representatives acknowledged to be unsafe, and which they had the power to stop. (*Id.* at p. 211.) Such facts are insufficient to defeat a motion for summary judgment, however, because " 'liability cannot be imposed on the general contractor based upon a mere failure to require the subcontractor to take safety precautions, where the general contractor's failure is not shown to have affirmatively contributed to the creation or persistence of the hazard causing the plaintiff's injuries.' " (*Ibid.*, quoting *Kinney v. CSB Construction, Inc., supra*, 87 Cal.App.4th at p. 30.) However, the imposition of liability *is* appropriate "when the hirer's conduct has affirmatively contributed to the injuries of the contractor's employee," because "the liability of the hirer in such a case is *not* ' "in essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor," ' [citation]" but "[t]o the contrary," is "*direct* in a much stronger sense of that term." (*Hooker, supra,* at pp. 211–212, fn. omitted.)

The court noted that to justify liability for negligent exercise of a power of control, the hirer's "affirmative contribution need not always be in the form of actively directing a contractor or contractor's employee. There will be times when a hirer will be liable for its omissions. For example, if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury." (*Hooker, supra,* 27 Cal.4th at p. 212, fn. 3.)

In a companion case, *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219, 222 [115 Cal.Rptr.2d 868, 38 P.3d 1094] (*McKown*), the court affirmed a judgment against a property owner who had asked the plaintiff's employer, an independent contractor, to use the owner's forklifts whenever possible, and who had supplied an unsafe forklift, causing injury to the plaintiff. The court held that "a hirer is liable to an employee of an independent contractor insofar as the hirer's provision of unsafe equipment affirmatively contributes to the employee's injury." (*Id.* at p. 222, fn. omitted.) Liability for furnishing defective equipment was appropriate because, under traditional tort principles, it required active participation by the hirer: " 'An owner is not liable for injuries resulting from defective appliances *unless he has supplied them* or has the privilege of selecting them or the materials out of which they are made [citation] or unless he exercises active control over the men employed or the operations of the equipment used by the independent contractor. [Citation.] [Citation.]" (*Id.* at p. 225, quoting *McDonald v. Shell Oil Co.* (1955) 44 Cal.2d 785, 788–789 [285 P.2d 902]; italics added by *McKown.*) " '[W]here the hiring party actively contributes to the injury by supplying defective equipment, it is the hiring party's own negligence that renders it liable, not that of the contractor.' " (*McKown, supra,* 27 Cal.4th at p. 225, quoting Court of Appeal.) The hirer was not relieved of liability by the fact that it did not insist on, but merely requested, use of the defective equipment: The contractor was "presumably loath to displease" the owner, "the world's largest retailer," with whom the contractor had several contracts. (*McKown, supra,* 27 Cal.4th at p. 225.) It was reasonable to suppose that refusal to use the forklift "would have generated ill will" by resulting in additional expense, chargeable to the owner, as well as delaying the project for at least 24 hours. (*Id.* at p. 226.)[2] Nor was liability defeated by the jury's attribution of the majority of fault to the contractor: "[T]he hirer's affirmative contribution to the employee's injuries eliminates the unfairness in imposing liability where the contractor is primarily at fault." (*McKown,* at p. 226.)

 If the principle of these cases can be stated in a sentence, it appears to be that the liability of a hirer of an independent contractor for injuries to an

---

[2] It is somewhat difficult to reconcile this conclusion with the majority's final point in *Hooker,* where it held that liability in that case could *not* be predicated on the fact that the defendant permitted traffic to use an overpass on which the decedent's crane was working, a practice that required retraction of the stabilizing outriggers and led, seemingly directly, to the decedent's death. (*Hooker, supra,* 27 Cal.4th at p. 215; see *id* at p. 202.) The court concluded that this was not an affirmative contribution to the plaintiff's injuries because the defendant "did *not* direct the crane operator to retract his outriggers to permit traffic to pass." (*Id.* at p. 215.) Under *McKown* (and, it seems, general tort principles), the question is not whether the defendant *commands* a certain result but whether he or she foreseeably *causes* it—in this context, whether he or she contributes to it by something more than a failure to intervene in the contractor's practices.

employee of the contractor cannot be predicated on the *contractor's* negligence; rather the hirer can only be liable where it injures a worker through *its own* negligence. Of course this formula does not provide an adequate test by itself, because negligence consists of the breach of a duty of care, and each of the theories rejected in the above cases seems at first blush to involve such a breach of such a duty.[3] However, these cases may be understood, and are perhaps best understood, as resting on the principle that the hirer of an independent contractor has *no duty* to protect *an employee of the contractor* from the consequences of *the contractor's negligence.* Insofar as the plaintiff's injuries result from the contractor's negligence, without any affirmative contribution by the hirer, the latter cannot be found to have violated any duty to the plaintiff.

Here, none of these principles—however stated—were shown to apply. Defendants made no attempt to demonstrate that plaintiff's own employer—the independent contractor—was negligent, let alone that its negligence was the sole, or even primary, cause of plaintiff's injuries. Even if such negligence had been shown—and shown without substantial controversy—the evidence fell far short of establishing that defendants did not affirmatively contribute to plaintiff's injuries. It is undisputed that they undertook to arrange and supply the means and methods of work, including safety systems and devices, which they then withdrew before the work was completed, leaving plaintiff with no safe means of completing the work. There was no evidence that this was done in the expectation that plaintiff's employer could, would, or should make substitute arrangements. It is true that the catenary lines had been removed some two months before plaintiff's injury, but there was no evidence that plaintiff's employer had the opportunity, or would have been permitted, to replace those lines. In any event the failure to do so might not have constituted negligence so long as the hydraulic lifts were present. There is evidence, however, that defendants abruptly removed the lifts the day before the injuries, that they wanted the work finished without delay, and that they might not have permitted a lift to be brought back into the copper gowning room even if one had been obtained. In short the evidence raises the strong

---

[3] Insofar as the duties in question are "nondelegable," they may actually be said to involve a kind of liability without fault—or liability based on a kind of *constructive* fault. It is true that liability for breach of such duties has been distinguished from strict liability. (See *Serna v. Pettey Leach Trucking, Inc.* (2003) 110 Cal.App.4th 1475, 1482, fn. 9 [2 Cal.Rptr.3d 835], citing *Maloney v. Rath* (1968) 69 Cal.2d 442, 446 [71 Cal.Rptr. 897, 445 P.2d 513].) The fact remains that under these theories the defendant may be held responsible notwithstanding the absence of any actual heedlessness on his or her part, and indeed after doing everything that could reasonably be expected to avoid the injury. (E.g., *Maloney v. Rath, supra,* 69 Cal.2d 442 [the defendant was liable for brake failure despite having just had brakes serviced].)

possibility, at least, that defendants not only actively contributed to plaintiff's injuries, but actually *created* the situation in which they were likely to occur. Defendants therefore failed to show that the principles and rationale of *Privette, Toland,* and *Hooker* operated to bar liability.

It also bears noting that *Privette, Toland, Camargo,* and *Hooker* all concerned theories of liability propounded as exceptions to the "general rule" that a hirer is not liable *for the negligence of an independent contractor.* (§ 409 ["Except as stated in [following sections], the employer of an independent contractor is not liable for physical harm caused to another by *an act or omission of the contractor* or his servants"], italics added.) There is no reason to exempt the hirer from liability under circumstances where a *complete stranger* would be liable. Nothing in these cases suggests that with respect to its own actual (as distinct from imputed or constructive) negligence, the hirer should enjoy any more freedom from liability to workers on its site than would an invitee or passerby. A hirer must be liable on general tort principles if, for example, he causes foreseeable harm by heedlessly shouting at a contractor's employee, distracting him from some hazardous task in which he is obviously engaged. These cases only excuse the hirer from a *duty* to protect employees from the *negligence of their own employer.* Where the hirer breaches a duty arising under general tort principles, nothing in these cases suggests that it may not be liable.

The facts here readily suggest that defendants may be liable under general tort principles for breaching a duty of care arising from their own voluntary endeavor to protect plaintiff and others from injury. " 'It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.' [Citation.]" *Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 613 [76 Cal.Rptr.2d 479, 957 P.2d 1313] (*Artiglio*), quoting *Glanzer v. Shepard* (1922) 233 N.Y. 236, 239 [135 N.E. 275, 276].) Thus "one 'who, having no initial duty to do so, undertakes to come to the aid of another—the "good Samaritan" '—has 'a duty to exercise due care in performance and is liable if (a) his failure to exercise care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.' (*Williams v. State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137], citing Rest.2d Torts, § 323; see, e.g., *Coffee v. McDonnell-Douglas Corp.* (1972) 8 Cal.3d 551 [105 Cal.Rptr. 358, 503 P.2d 1366]; see also BAJI No. 4.45 ['A person who is under no duty to care for or render service to another but who voluntarily assumes such a duty, is liable to the other for injury caused by a failure to exercise ordinary or reasonable care in the performance of that assumed duty'].)" (*Artiglio, supra,* 18 Cal.4th at p. 613, fn. omitted.)

■ These principles are summarized in sections 323 and 324A, which provide that a person may be liable for negligently performing a voluntary undertaking to render services for the protection of another.[4] It follows that one may assume a duty of reasonable care by endeavoring to provide safety equipment to another, and may be liable for breach of that duty.[5] Whether such a duty actually arose here, and if so whether it was breached by defendants, need not and cannot be determined on the present record.

■ "[W]hile '[t]he "precise nature and extent" of [an alleged section 324A] duty "is a question of law . . . []it depends on the nature and extent of the act undertaken, a question of fact." ' [Citation.] Thus, if the record can support competing inferences [citation], or if the facts are not yet sufficiently developed [citation], ' "an ultimate finding on the existence of a duty cannot be made prior to a hearing on the merits" ' [citation], and summary judgment is precluded. [Citations.]" (*Artiglio, supra,* 18 Cal.4th at p. 615.)

Here plaintiff asserted without dispute that defendants provided two systems, at least one of which was manifestly intended for, and both of which had the effect of, protecting plaintiff and other workers from injuries due to falling. Whether defendants furnished these systems gratuitously or out of obligation, once they did so they assumed a duty not to increase the risk of harm to plaintiff either by acting negligently or by inducing reliance which increased the harm.

---

[4] Section 323 provides: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if [¶] (a) his failure to exercise such care increases the risk of such harm, or [¶] (b) the harm is suffered because of the other's reliance upon the undertaking."

Section 324A provides: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if [¶] (a) his failure to exercise reasonable care increases the risk of such harm, or [¶] (b) he has undertaken to perform a duty owed by the other to the third person, or [¶] (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

These sections state subtly different rules depending on whether the protective undertaking is directed to the injured party or to a third person. (§§ 323, 324A.) Given the procedural posture of this case it scarcely matters which rule is applied, since the evidence fails to conclusively negate the applicability of either.

[5] The term "undertaking" is potentially somewhat ambiguous, since it may refer either to a promise that one will do a thing, or to an actual endeavor or setting-out to do the thing. Both kinds of undertaking can give rise to liability, and both are arguably implicated here. Because defendants plainly embarked on an actual attempt to render services for plaintiff's protection, however, we need not consider whether liability could be predicated on a purely contractual undertaking between an injured plaintiff's employer and the landowner or other person hiring that employer.

To be sure, a duty thus voluntarily undertaken is not limitless. A Good Samaritan does not enslave himself eternally to the beneficiary of his undertaking merely by once rendering aid. (See *Artiglio, supra,* 18 Cal.4th at p. 615, and cases cited.) Here, however, defendants made no attempt to show that they had disengaged from their undertaking without worsening plaintiff's position or otherwise affirmatively contributing to his injuries. So far as this record shows, there were only two human causes for the injuries at issue: defendants' decision to remove safety devices, and plaintiff's decision to perform his assigned work despite defendants' having rendered it inescapably unsafe to do so. As *McKown* makes clear, a plaintiff's (or his employer's) negligence does not categorically insulate the employer's hirer from liability where its own negligence affirmatively contributes to the harm. Accordingly, even if the plaintiff's decision to perform the work was negligent—a point defendants have failed to establish—the facts before us would afford no basis for summary judgment.

## III. *Admissible Evidence*

Defendants contend that some of the evidence on which plaintiff relies (and the foregoing analysis rests) should not be considered because meritorious objections to it were lodged by them in the trial court.[6] As pertinent here, however, the objections were *not* meritorious. The only objection bearing on defendants' removal of hydraulic lifts was that certain deposition testimony was "hearsay" insofar as it asserted that defendants "wanted" the lifts removed. This testimony may have lacked a foundation in personal knowledge. (See Evid. Code, § 702.)[7] But it is not *hearsay,* i.e., "evidence of a *statement* that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of *the matter stated.*" (Evid. Code, § 1200, subd. (a), italics added.) None of the challenged testimony

---

[6] Citing *Biljac Associates v. First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1419 [267 Cal.Rptr. 819], the trial court expressly "decline[d] to render formal rulings on evidentiary objections," stating that it had "disregarded all inadmissible and incompetent evidence in ruling, as well as immaterial facts and the evidence supporting them." Such an approach is indeed sanctioned by *Biljac,* but at least two subsequent cases have taken issue with it, suggesting instead that where the trial court fails to expressly rule on objections, all evidence before it must be viewed on appeal as though it had been admitted without objection. (*Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 623 [124 Cal.Rptr.2d 556], disapproved on another point in *Zamos v. Stroud* (2004) 32 Cal.4th 958, 973 [12 Cal.Rptr.3d 54, 87 P.3d 802]; see *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 236 [114 Cal.Rptr.2d 151].) We need not now address this conflict because the trial court accepted the challenged evidence at face value, implicitly overruling defendants' objections, and because we likewise find the objections meritless.

[7] The testimony might reflect an admissible lay opinion (Evid. Code, § 800), or it might rest on statements by Intel supervisors that would themselves be admissible as vicarious statements by a party opponent (Evid. Code, § 1222). In the absence of a foundational objection there was no occasion to identify the factual basis for the testimony.

purported to recount "a statement," let alone to prove what was "stated." If the witnesses *had* testified to an extrajudicial statement concerning what Turner or Intel "wanted," the testimony might well have come within the hearsay exception for a "statement of the declarant's then existing state of mind [or] emotion . . . (including a statement of intent, plan, motive, design, [or] mental feeling . . .) . . . ." (Evid. Code, § 1250, subd. (a).) There is no occasion to consider hearsay exceptions, however, because the evidence is simply not hearsay.

■ Nor is there merit in defendants' argument that any reference to the removal of the catenary anchoring system must be disregarded because plaintiff failed to mention that conduct in his discovery responses. This argument presupposes that a party opposing summary judgment may be precluded from relying on facts that could have been but were not mentioned in response to interrogatories. This premise in turn rests on the "urban legend" that "a responding party has an affirmative duty to supplement responses to interrogatories if and when new information comes into that party's possession . . . ." (*Biles v. Exxon Mobil Corp.* (2004) 124 Cal.App.4th 1315, 1318–1319 [22 Cal.Rptr.3d 282].) There is no statutory duty in California to supplement interrogatory responses. (*Id.* at p. 1328.) Even if plaintiff had violated a duty to supplement his responses it would not ordinarily justify the exclusion of evidence in the absence of a *willful* violation of an *order* for disclosure. (*Id.* at p. 1327.) ■ In short, without a demonstration of "discovery abuse," there is no general prohibition against "introducing previously undisclosed evidence in opposition to a summary judgment motion." (*Id.* at p. 1329, fn. omitted.)

Seeking some more solid basis to exclude evidence of the catenary lines, defendants characterized plaintiff's declaration below as "contradictory" of prior testimony insofar as it referred to such lines, and thus barred by a kind of judicial estoppel under *Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1613 [286 Cal.Rptr. 402]. This point is implicitly reiterated on appeal by citation to *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 961 [62 Cal.Rptr.2d 142], which applied substantially the same principle. But the argument fails of an essential premise, i.e., that plaintiff's declaration *contradicted* his discovery responses. It disclosed matters not mentioned in those responses, but it was in no sense logically inconsistent with them. The cases cited by defendants prevent parties from avoiding summary judgment by contradicting their earlier, unequivocal *admissions*, i.e., *affirmative statements* concerning the events at issue. Here plaintiff made no such earlier affirmative admission.

DISPOSITION

The judgment is reversed.

Premo, J., and Elia, J., concurred.

Respondents' petition for review by the Supreme Court was denied June 22, 2005. Baxter, J., and Chin, J., did not participate therein.