Filed 1/20/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| RODOLFO PLASCENCIA et al., Plaintiffs and Respondents, v. CHARLES GYNN DEESE et al., Defendants and Appellants. | 2d Crim. No. B299142 (Consolidated with No. B299925) (Super. Ct. No. 56-2015-00475756-CU-PO-VTA) (Ventura County) |

One of the institutional functions of the California Court of Appeal is to opine on whether or not an error at trial has resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.)[1] Here, there has been a miscarriage of justice and we must vacate the $30 million dollar non-economic damage award in this highway fatality case.

---

[1]"No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art VI, § 13.)

In personal injury and wrongful death actions, noneconomic damages are governed by Proposition 51, which eliminated the perceived unfairness of imposing "all the damage" on defendants who are "found to share [only] a fraction of the fault." (Civ. Code, § 1431.1, subd. (b); *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 603 (*DaFonte*).) A defendant is liable only for the percentage of noneconomic damages that corresponds to his or her proportionate fault. (Civ. Code, § 1431.2, subds. (a) & (b)(2); *Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 202.) Stated another way, "a 'defendant['s]' liability for noneconomic damages cannot exceed his or her proportionate share of fault *as compared with all fault responsible for the plaintiff's injuries*, not merely that of 'defendant[s]' present in the lawsuit." (*DaFonte, supra,* at p. 603.) Here, the jury was not permitted to consider the comparative fault of defendants who settled before trial. Reversal is required for this reason alone.

The second reason for reversal is that respondents' counsel engaged in prejudicial misconduct. Appellants contest a $30 million award of noneconomic damages. The jury found appellants 40 percent at fault and the motorist who made an illegal U-turn 60 percent at fault. In final argument, respondents' counsel, referring to appellant Deese, told the jury: "You can't stone him to death" but you can "make him pay." In violation of a pretrial in limine order prohibiting counsel from invoking the Golden Rule, respondents' counsel asked the jury to "imagine" it was "your daughter" and "some guy broke a rule that he knew he couldn't break . . . and your daughter is taken away."[2]

---

[2] Before trial, the trial court ordered that "plaintiffs will not argue that the jury should award wrongful death damages based

Finally, respondents' attorney accused appellants and their attorney of "lying," of delaying settlement with respondents for five years, and of presenting a defense that is a "fraud." This was misconduct and it denied appellants a fair trial. (Cal. Const., art. VI, § 13.)

*Facts and Procedural History*

On April 19, 2014, Anita Newcomb made an illegal U-turn on SR 126, a four-lane highway, as she left Francisco's fruit stand on the south side of the highway. Respondents' 20-year-old daughter, Jocelyne, swerved to avoid hitting Newcomb. Jocelyne lost control of her Camry and crashed into the back of appellants' 80,000-pound diesel tractor-trailer, which Deese had parked on the south side of the highway near the fruit stand.

Minutes before the collision, Deese testified that he smelled hot engine oil and parked the diesel tractor-trailer three feet to the right of the highway fog line. Deese believed it was an emergency. He opened the engine hood but saw no oil leaks. After concluding there was no emergency, Deese left the truck unattended with his co-driver asleep in the truck cab and walked to the fruit stand to buy strawberries.[3] Seconds later, Jocelyne

on what jurors would feel they would want as compensation if they had suffered the loss."

[3] At trial, Deese stated it was a roadside emergency and that he opened the engine hood and inspected the engine. That was disputed by respondents. The fruit stand surveillance video showed Deese park the truck and walk back to the fruit stand. No one opened the engine hood, inspected the engine or truck wheels, or put out reflective triangles to warn motorists. Nor did Deese tell the company dispatcher he was making an emergency stop. Truck experts testified that the standard of care was not to

swerved to avoid the U-turn driver, skidded for three seconds across the highway, and hit the back of the tractor-trailer. Jocelyne was airlifted to the hospital and died a month later.

*Pretrial Techbilt Settlements*

Respondents sued for wrongful death damages based on theories of negligence, negligence per se, and dangerous condition of public and private property. Before trial, County of Ventura was dismissed. State of California settled for $1.5 million, and the U-turn driver and the owner of Newcomb's vehicle settled for $115,000. Francisco's Fruit Stand and MMFG, LLC (the owner of the fruit stand parking lot) settled for $825,000. Over appellants' objection, the trial court found the settlements were in good faith (Code Civ. Proc., § 877.6; *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 506).

*In Limine Order on Comparative Fault Evidence*

Several motions in limine were argued the first day of trial. The trial court ruled that appellants could not present evidence on the comparative fault of the State of California, the fruit stand, or the parking lot owner because appellants, in responding to contention interrogatories, claimed the U-turn driver was the sole cause of accident. The interrogatory answers did not mention the State of California, the fruit stand, or the parking lot owner even though the comparative fault of third parties was alleged as affirmative defenses three and four.

*Jury Instructions and Special Verdict*

The jury was instructed to consider only the comparative fault of the U-turn driver and appellants. The jury

---

park on the side of a highway in a non-emergency situation. If a truck driver did that, the truck would be a "sitting duck."

awarded $30 million wrongful death damages, finding the U-turn driver 60 percent negligent and appellants 40 percent negligent.[4] The trial court, in denying motions for new trial and judgment notwithstanding the verdict, stated the in limine order was made because appellants "sandbagged" respondents in discovery. When appellants responded to contention interrogatories in 2016 they "point[ed] the[ir] finger[s] at Newcomb. . . . [¶] . . . [N]otwithstanding several opportunities, [they] never pointed the finger once at the State of California or MMFG or Francisco's Fruit, and . . . [laid] in the reeds for an extensive period of years of litigation . . . without reopening discovery to supplement responses . . . . [Y]ou might not have a duty to do it, but you certainly ha[d] an opportunity to do it to prevent surprise . . . . [¶] [¶] And you can't under the rules of discovery, you can't lay in the reeds, say you're not contending something, and then change it all around at the last minute. It just doesn't work like that."

*Proposition 51 – the Universe of Tortfeasors*

"Generally, a trial court's ruling on an in limine motion is reviewed for abuse of discretion. [Citation.] However, when the issue is one of law, we exercise de novo review. [Citation.]" (*Condon-Johnson & Associates*, *Inc. v. Sacramento Municipal Utility Dist.* (2007) 149 Cal.App.4th 1384, 1392.) The question here is whether the in limine order and instructions violate Proposition 51 (Civ. Code, § 1431 et al.) which requires

---

[4] The trial court amended the $12 million judgment to add $2.37 million prejudgment interest because appellants failed to accept respondents' $1 million pretrial statutory offer to settle the case. (Code Civ. Proc., § 998.)

that the award for noneconomic damages be limited to the proportionate fault of each tortfeasor.  Pursuant to Proposition 51, the jury must apportion the fault of each tortfeasor, including defendants who settle before trial.  (*Vollaro v. Lispi* (2014) 224 Cal.App.4th 93, 100, fn. 5.)  The jury considers ""the relative responsibility of various parties for an injury (whether their responsibility for the injury rests on negligence, strict liability, or other theories of responsibility), in order to arrive at an 'equitable apportionment or allocation of loss.'"  [Citation.]'  [Citations.]"  (*Pfeifer v. John Crame, Inc.* (2013) 220 Cal.App.4th 1270, 1285.)

Here the jury awarded $30 million in damages but was not permitted to consider the comparative fault of the settling defendants, i.e., the State of California, the fruit stand, and MMFG. Under Proposition 51 (Civ. Code, §§ 1431 to 1431.5), appellants are "only responsible for [their] comparative percentage of fault for the noneconomic damages . . . ." (*Roslan v. Permea, Inc.* (1993) 17 Cal.App.4th 110, 112 (*Roslan*).)  "[I]t is error for a trial court not to allow the jury to assess the comparative fault of defendants who settled before trial.  [Citation.]  Likewise, it is error to exclude evidence of the culpability of defendants who settled before trial to allow the jury to make that assessment.  (Citation.]" (*Romine v. Johnson Controls, Inc.* (2014) 224 Cal.App.4th 990, 1011.) Although the $30 million award was apportioned to reflect the comparative fault of the U-turn driver, "it was not reduced by the comparative fault of the [other] settling defendants.  This error mandates reversal." (*Roslan, supra,* at p. 112.)

*No Continuing Duty to Supplement Interrogatory Answers*

Respondents argue that appellants were estopped to assert the comparative fault of the settling defendants, by their

6

responses to the contention interrogatories. A party, however, has no duty to amend or supplement his or her interrogatory answers. (*Biles v. Exxon Mobil Corp.* (2004) 124 Cal.App.4th 1315, 1328.) It is "'urban legend' that 'a responding party has an affirmative duty to supplement responses to interrogatories if and when new information comes into that party's possession. . . .' [Citation.]" (*Browne v. Turner Construction Co.* (2005) 127 Cal.App.4th 1334, 1349.) Even if appellants "violated a duty to supplement [their] responses it would not ordinarily justify the exclusion of evidence in the absence of a *willful* violation of an *order* for disclosure. [Citation.]" (*Ibid*; see, e.g., *Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 985 [state willfully refused to obey court orders compelling discovery; trial court imposed an issue sanction on design immunity].)

Respondents did not file a motion to compel further discovery responses or a motion for an issue-evidence sanction, and knew the comparative fault of the settling defendants was the elephant in the room. The First Amended Complaint alleged that the State of California, the fruit stand, and MMFG owned and maintained a dangerous property condition that contributed to the collision.[5] Appellants alleged comparative fault as an

_____

[5] Appellants' reliance on *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, is misplaced. There, the complaint and plaintiff's interrogatory answers stated that Coldwell Banker was negligent in disclosing the condition of a swimming pool diving board. Plaintiff/buyer stood on the diving board to look over a fence and the diving board collapsed, causing plaintiff to fall into the empty pool. (*Id.* at pp. 440-441.) We affirmed the summary judgment on the ground that "[p]laintiffs cannot rely on their unpled, undisclosed

affirmative defense and opposed the *Tech-Bilt* motions on the ground that the settlements were grossly disproportionate to the settling defendants' comparative fault. Comparative fault was discussed in the trial briefs and before trial. In opposing the fruit stand's and MMFG's motions for summary judgment, respondents argued that the parking lot was located "*entirely within the public right of way*" and "[h]ardly a more dangerous configuration can be conceived . . . ." Respondents claim they were prejudiced by appellants' terse discovery responses, but settled with the fruit stand and parking lot owner for a large sum of money well before trial, and for a reason. Respondents' truck expert (Lew Brill) said the parking lot was "a calamity of . . . confusion . . . . [T]here's a lot of cars in there, a lot of activity that's happening there." Before the collision, there were near misses involving vehicles leaving and entering the parking lot, and the fruit stand was cited for violating road setback and parking requirements. The State was aware of the problem. It demolished the fruit stand in 1993 to widen the highway and staked out the place where the fruit stand and parking lot were rebuilt, i.e., in the public right of way.

Respondents argue that contention interrogatories are necessary to "'set at rest'" issues not genuinely disputed. (*Burke v. Superior Court of Sacramento County* (1969) 71 Cal.2d 276, 281.) No published opinion has stated that terse responses to contention interrogatories trump a Proposition 51 proportionate fault defense. Before an issue-evidence preclusion

---

. . . theory that Coldwell is liable for failing to remedy, warn, or otherwise protect Jacques from the dangerous condition of the empty pool." (*Id*. at pp. 445-446.)

order is made, there must be a bad faith and willful violation of an existing discovery order. *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613 illustrates the principle. There, Pratt failed to respond to 50 court-ordered discovery requests in a wrongful death action. The trial court struck Pratt's answer on liability (*id.* at p. 621) and granted summary adjudication on liability based on an earlier issue-determination and evidence-preclusion order. (*Id.* at pp. 621-622.) On the first day of trial, the trial court granted a motion in limine, prohibiting Pratt from presenting evidence of third party comparative fault. The jury awarded $4.8 million damages. The Court of Appeal affirmed, holding that Civil Code section 1431.2 could not be used as a shield to protect a defendant from the consequences of a flagrant discovery dereliction and reward Pratt for its bad faith discovery tactics. (*Johnson*, *supra*, at p. 627.)

Unlike *Johnson*, respondents knew the comparative fault of the settling defendants was a contested issue but did not ask for supplemental interrogatory answers, propound requests for admissions, or file a motion to impose an issue-evidence sanction. This is significant. Unless there has been "a violation of an order compelling an answer or further answer, the evidence sanction may only be imposed where the answer given is *willfully false*. The simple failure to answer, or the giving of an evasive answer, requires the propounding party to pursue an order compelling an answer or further answer—otherwise the right to an answer or further answer is waived and an evidence sanction is not available." (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 334.)

"What in limine motions are *not* designed to do is to replace the dispositive motions prescribed by the Code

9

of Civil Procedure." (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1593.) "The better practice in nearly every case is to afford the litigant the protections provided by trial or by the statutory processes." (*Id.* at p. 1588; Finley, Cal. Motions in Limine (The Rutter Group 2019) ¶ 1:1, p. 1-4.) Here, the in limine order infringed on appellants' statutory right to have the jury determine the comparative fault of the other tortfeasors. The jury was instructed to consider the comparative fault of the U-turn driver and appellants but no one else. The trial court said: "I got to tell you, it's a big tag item for me to tell somebody that you can't present evidence with regard to comparative fault." We are compelled to reverse. "Each defendant shall be liable only for the amount of noneconomic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." (Civ. Code, § 1431.2, subd. (a).)

*Golden Rule Argument and Ad Hominem Attacks*

During final argument, respondents' counsel told the jury that counsel is "not being straight with you," and this is "not the time to make up lies and to try to cheat your way to justice." Appellants and their attorney spent the last five years "actively evading responsibility. And not just actively evading it, but [by] lying." "I called them lies in the beginning, but . . . they have blown into even bigger things because it is a fraud."

Respondents' attorney asked the jurors to "[j]ust imagine that is your daughter," and to image "that constant love and connection between you and your daughter," and that "your daughter is taken away." Counsel argued that Jocelyne was like a hundred-million-dollar Picasso painting and to "[i]magine you

10

have this Picasso of a human being."  "She doesn't exist anymore."

After the jury returned the $30 million verdict, appellants moved for new trial based on, among other things, excessive damages.  Denying the motion, the trial court acknowledged "[i]t's inappropriate to . . . make an ad hominem attack against the other lawyer for lying, and then to talk about [how] it's somehow not okay to try the case and to not settle it earlier."  The court found the issue was waived because no objection was made and attorney misconduct "was a tangential argument related to excessive damages."  "'Moreover, even if [appellants] had not waived their objections to the comments of [respondents'] counsel in closing argument, the Court finds that any such comments could not have been prejudicial to this case.'"

The $30 million verdict is so large that it shocks the conscience and suggests passion or prejudice on the part of the jury.  (*Burchell v. Faculty Physicians & Surgeons etc.* (2020) 54 Cal.App.5th 515, 527.)  Jocelyne lived at home, was not employed, was contemplating marriage, and was still attending fashion design school.  "We may consider not only the amount of the award, but also other '"indications in the record that the fact finder was influenced by improper considerations,"' such as 'inflammatory evidence, misleading jury instructions, improper argument by counsel, or other misconduct.' [Citation.]" (*Ibid.*) Each case must be decided on its own facts and circumstances. (*Ibid.*)

Here, the Golden Rule argument and ad hominem attacks on defense counsel were designed to, and did, impugn the integrity of appellants' trial counsel.  Cases should be decided upon the facts and the law only.  Defense counsel did not lie and

did not commit a fraud by exercising the right to trial. "You can't stone him to death" but you can "make him pay." The inference was that appellants' failure to settle the case had caused Jocelyne's parents grief or sorrow, none of which is recoverable in a wrongful death action. (Code Civ. Proc., § 377.61; *Krouse v. Graham* (1977) 19 Cal.3d 59, 69.)

"[E]ven in the absence of an objection and request for admonition, where there are flagrant and repeated instances of misconduct, an appellate court cannot refuse to recognize the misconduct." (*Simmons v. Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341, 355 (*Simmons*).) When the attorney misconduct is egregious and a motion for new trial has been *denied,* the deferential abuse of discretion standard of review does not apply to the question of prejudice. (*Los Angeles v. Decker* (1977) 18 Cal.3d 860, 872.) Prejudice exists if it is reasonably probable that the jury would have arrived at a verdict more favorable to the moving party in the absence of the irregularity or error. (*Ibid.*; see *Garden Grove School District v. Hendler* (1965) 63 Cal.2d 141, 143 [prejudicial misconduct where plaintiff's attorney resorted to insulting and derogatory characterizations of defendants, and impugned the motives and purpose of defendants]; *Simmons, supra,* at pp. 351-357 [counsel accused defendant of cheating, stealing, and perjury]; *Kenworthy v. State of California* (1965) 236 Cal.App.2d 378, 397-399 [misconduct "was a deliberate attempt to administer poison, no single dose of which was lethal but with an accumulative effect inevitable and realized"].) "The question is not whether the award is a reasonable one, but whether it is reasonable to conclude that a verdict more favorable to defendants would have

been reached but for the error.  (Cal. Const., art. VI, § [13].)" (*Garden Grove School Dist.*, *supra*, at p. 144.)

We have reviewed the record and conclude the misconduct was too serious to be cured by an objection and admonition.  (*Simmons*, *supra*, 62 Cal.App.3d at p. 355.)  The record leaves no doubt it was carefully contrived and calculated to arouse and inflame the jury to award a large verdict.  (See *Love v. Wolf* (1964) 226 Cal.App.2d 378, 394.)  The Golden Rule argument that the jurors should "imagine" it was their daughter that was taken away, and that appellants' trial attorney had lied and delayed settlement to commit a fraud was prejudicial and requires reversal.  "The law, like boxing, prohibits hitting below the belt.  The basic rule forbids an attorney to pander to the prejudice, passion or sympathy of the jury.  [Citation.]"  (*Martinez v. Department of Transportation* (2015) 238 Cal.App.4th 559, 566.)

Appellants urge us to reverse the judgment as to both liability and damages, but the jury's finding of liability is supported by substantial evidence.  Respondents' expert witness opined that Deese fell below the standard of care when, having determined no emergency existed, he left the truck unattended on the side of the highway.  Appellants' trucking expert conceded the point when he testified, "You're not supposed to park on the shoulder of a highway unless you have an emergency."  Deese himself admitted there was no emergency when he left the truck to buy strawberries and that his conduct in leaving the truck parked on the side of the highway breached the standard of care.  This is substantial evidence from which a reasonable jury could find that appellants bear some portion of the fault for these tragic events.

The error requiring reversal here is with regard to the judgment on damages.  First, the trial court erroneously excluded evidence of the comparative fault of the settling defendants.  Second, no substantial evidence appears to support the amount of the damages award, an amount that shocks the conscience and appears to have been influenced by the misconduct and improper argument of respondents' counsel.  Under these circumstances, the appropriate course is to reverse the judgment with respect to the award of damages and to remand for a new trial to determine both the amount of the damages award and its apportionment based on the comparative fault of the universe of tortfeasors.  (See, e.g., *DaFonte*, *supra*, 2 Cal.4th at p. 603; *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1334, fn.16; *Roslan*, *supra*, 17 Cal.App.4th at p. 113.)

*Disposition*

The judgment is reversed as to the award of damages and the matter is remanded with directions to conduct a new trial limited to determining the amount of the damages award and its apportionment among all defendants, including those who settled before trial.  Appellants are awarded costs on appeal.

CERTIFIED FOR PUBLICATION.

YEGAN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

14

Matthew P. Guasco, Judge

Superior Court County of Ventura

_____

Clark Hill, Pamela A. Palmer, David L. Brandon and Ryan C. McKim; Gutierrez, Preciado & House, Arthur Preciado and Arthur Javier for Defendants and Appellants.

The Homampour Law Firm, Arash Homampour and Scott E. Boyer; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiffs and Respondent.